May it please the Court. Tom Brown for the appellants in this case. As the Court knows, this is an insurance coverage dispute. It involves five discrete coverage issues and a sixth issue which the Court needs to reach only if it rejects, does not agree with us on our five coverage issues. In other words, the sixth issue becomes moot and it only becomes relevant if the Court disagrees in any respect with our coverage positions. Can I ask just your view, your summary of your take on Oregon law on constrained coverage? In some jurisdictions, the ambiguities in a policy tend to be construed against the insurer and that basically the tilt is in favor of coverage. Exclusionary clauses are construed narrowly. What is the law generally in that regard? I've read, looked at the cases, but you're obviously relying on either ambiguities or at least the contrary. You're arguing with the plain meaning language, so tell me what your legal foundation is. Let me articulate that for the Court. Hoffman construction is the seminal case and in that case the Court sets forth a very specific methodology. And if you're familiar at all with how the Oregon Supreme Court applies methodology, both in terms of contract construction, insurance contract construction, and statutes, it's very cued to the specific methodology. Hoffman has the following parts. One, you look to see whether the term in an insurance policy has a plain meaning. And you do so by resort to the common ordinary definition of that term. Webster's Dictionary is repeatedly used by Oregon courts to accomplish that first task. If the dictionary definition has only one plausible plain meaning, the inquiry ends and the court applies that plain meaning to the term. If the court decides that the dictionary definition has two plausible or reasonable meanings, it proceeds to the second step. The second step is to review the term in context, to look at each side's proffered meaning in context. And context includes the phrase in which the term is used, the policy as a whole, case law elsewhere interpreting the term, and treatises that help inform the term. At that level, the court then asks the same question. Is there only one plausible meaning to this term in context? If there is, the court applies it. If there is no single plausible meaning, in other words, both sides have offered a reasonable meaning of the involved term when viewed in context, the term is read against the insurer. What Hoffman Construction tried to make clear was you don't jump immediately to ambiguity, to the principle of ambiguity. You do have to go through this methodology. But at the end of the day, if a policyholder offers a plausible meaning for a term and an insurer offers a plausible meaning for a term, either at the plain meaning step or in context, that term is going to be read against the insurer. The second principle is consistent with case law elsewhere. Exclusion clauses are construed narrowly. So Oregon engrafts that sort of generalized proposition into the Hoffman Construction methodology. So in this particular case, the district court is correct only if, with respect to each of these five discrete issues, travelers offered the only plausible meaning to the involved coverage terms, either at the plain meaning level or when read in context. Obviously, as the briefs reflect, with respect to all five discrete issues, we take the position that either we offered the only plain meaning, but more fundamentally and practically for this purpose, that when read in context, you could not say, and the district court erred in saying, that with respect to each of the five discrete issues, travelers offered the only plausible meaning in context. And so long as we offered a plausible meaning of the involved terms in context, the trial court erred. Each time, with each issue, that's the inquiry the court needs to go through. Though there are five issues, I want to focus on the first three, which, as the briefs reflect, are called the continuation pay issue, the salary reduction issue, and the stock-related issues. And I think the severance pay issue really can be used as an example of how the district court, in this case, misapplied Hoffman Construction, and why travelers' arguments at trial and on appeal also reflect the misapplication. The parties offered a plain meaning, and that plain meaning of severance pay, which, for purposes of the continuation claim, is the focal point. Well, I'm not sure about that, so let's start there. This sentence is not grammatically accurate. Absolutely. Because it talks about money including such and such. Damages means money, and damages shall not include. Then it says severance pay or penalties under employment contract. That makes sense. And an agreement can't be money, so the only sense one can make out of it is that the comma is misplaced, that there shouldn't be a comma after contract. If you take the comma out after contract, then the whole thing makes sense. And then it seems to me that payment in the event of separation from employment becomes essentially a definition of severance pay. The two become the same. And then we don't have to worry about what severance pay means. We only have to worry about what payment in the event of separation from employment means, which doesn't mean you lose. It just means that we don't have to worry about severance pay in the abstract. And what's wrong with that reasoning? A couple things. One, Oregon law is very clear. The Court can't rewrite a question. The first part, severance pay or penalties under an employment contract. So that focuses on the phrase severance pay, which the parties focused on below. The only other way to read it is severance pay or penalties under any agreement, policy, or procedure. Under an employment contract or under any agreement policy or any other agreement. As I pointed out in my brief, the clause after the comma, it doesn't make any sense because it has no independent reference to a form of money damages. So you would insert under after or. Well, no. What I'm saying is the only way you can read these two clauses is severance pay or penalties under an employment agreement or severance pay or penalties under any agreement, policy, or procedure providing for payment in the event of separation from employment. Then let me ask you a question, and this is from your agreement with Leonard. And this is subsection D1. After termination of Leonard's employment without cause, and I think that that's been agreed, Akrodine will continue Leonard's salary at the same payment intervals and in the same payment amounts in effect at the time of termination until the end of the six-year term of this agreement. Why doesn't that fit in with the language and agreement for payment in the event of separation from employment? Well, I have a couple of answers to that. First of all, this is indisputably an employment agreement. Travelers never disputed that below. Travelers chose to write this provision the way it did. And it wrote it in part that we don't pay for severance pay under an employment contract. That is a discrete limitation that travelers chose to write. So you have to decide respectfully, I'd say, is that provision which you just read, severance payment, severance pay under an employment contract. The rest of the sentence, which the district court viewed incorrectly, I submit as context, does not serve to define severance pay. That again, travelers could have defined severance pay, but it didn't. And it is perfectly possible to have an agreement that provides for payment in the event of separation from employment that does not, in fact, involve severance pay. So that's the whole point. And I guess my question is, why isn't the sentence that I just read an agreement providing for payment in the event of separation from employment? It seems to me that what you're saying here is if we terminate you without cause, we will continue your salary. The salary that we agreed to give you, we will continue the salary in the event of termination. It says after termination of Leonard's employment without cause. And the reason is because for each of those two clauses, you must have something that satisfies the definition of damages. You must have a claim for money. And that second clause standing alone lacks that. It doesn't say, it can only be read to say and make any sense that we will not pay for severance pay or penalties under any agreement, policy or procedure providing for payment in the event of separation from employment. Because that clause describes a kind of agreement. It doesn't have any form of damages to it. Only the word severance pay or penalties do that. So either way, you have to have severance pay. Let's assume it's severance pay. And why isn't what Judge Barzilay just read severance pay? Because the dictionary definition of severance pay, which the district court accepted correctly, is an allowance usually based on length of service that is payable to an employee on severance. Two, context which the court was, should have considered includes case law from other jurisdictions which give additional texture to that definition. And what that means. That's not what Hoffman means by context, is it? I'm sorry? That's not what Hoffman means by context, is it? It does. Your Honor, if you look at Nike versus Northwestern Pacific Indemnity, which is also cited in the briefs, the court of appeals in that case said, we therefore begin by briefly examining what, quote, discovery of the loss entails, considering the terms plain meaning cases from other jurisdiction and other legal authorities in the insurance arena. And that's how it defined context. So yes, how other courts have defined the term helps inform context under Oregon law for how an Oregon court will define the term severance pay. Okay, just so I go back and understand your argument. Your first argument is that because this is admittedly an employment contract, an employment agreement or employment contract, then the first clause controls. Correct. That's it. We don't need to get to the second clause. Correct. That would be your first argument. And this does not meet the definition that you've adverted to of severance pay. It's a continuation of pay, but it's not severance pay, because it's not based on years of service and so on and so forth. Correct. And your fallback position is if one goes to the second clause, which we don't know whether it's independent or dependent, you would read in that it's severance pay under any other contract providing for payment, but it would still have to be severance pay. So severance pay is embedded in both parts of that paragraph. Right, because otherwise the clause makes no sense. And secondly, because if you – I mean, what that means is damages in the policy doesn't include any agreement, policy or procedure providing for payment in the event of separation from employment. Well, that doesn't make any sense. Damages doesn't relate to a form of an agreement. It relates to a type of compensation sought. That's what the definition of damages says. What does that clause, the second clause, describe then? I think it describes two separate types of agreements. One is we won't pay severance pay in an employment agreement, and we will not pay severance pay in another form of agreement, which provides for payment in the event of separation from employment. Either way. It has to meet your dictionary definition of severance pay. And if there's any question about whether my construction is reasonable or not reasonable, when viewed in context, Travelers loses anyway. So the insured does bear the benefit of putting the insurer to task. They have to write policy provisions clearly. And if they don't, if they don't offer the only plausible construction, they lose. And that's what that. Are you going to talk briefly about the unpaid services provision? I'm sorry, I didn't hear you. The unpaid services provision? The unpaid services? Sure. Again, to me that's, you know, the district court thought that was semantics, and I suggest not in the world of insurance contract construction. Unpaid services mean I don't get paid for what I do. I do something for free. I did not get paid for what I'm doing. Now, the district court thought, well, it could just as easily mean I didn't get all that I was promised I would get paid. But to me that just proves the ambiguity, because those arguably are two reasonable constructions of the term unpaid services. If travelers had wanted to, could it define the term? If travelers had wanted to, it could have said services for which you receive nothing or receive less than you think you're entitled. It didn't. It could have said unpaid compensation. That would have been the easiest way to do it. I'm sorry? It could have just said unpaid compensation. Could have said unpaid compensation. That's what I think is odd about it, is that it's not saying unpaid wages or unpaid compensation. It's saying unpaid services. Yes, Your Honor. Which is an unusual location. How does, in that same vein, the damage preamble says damages means money, including back pay. What do you understand back pay to be? I don't have, let's see, if I have to look. Damages including back pay and front pay. Well, in an employment context, if I understand it, and I'm not an employment lawyer so I may be wrong, back pay under Oregon law is past wage laws. So we're not paid. Not paid entirely or not paid in the amount agreed? I don't know the answer. But it is more specific than that because I've been staring at it for a while. It says, Some sought solely on the basis of a claim for unpaid services under an express or implied agreement. And if you look back then at the affirmative coverage, or look forward, I guess, at the affirmative coverage, the affirmative coverage includes, where is this the provision? PR 58 or? It's Q, right? It's the definition of wrongful employment practice. And number two is breach of an oral, implied, or written employment agreement. So it appears, originally I thought, well, this absolutely can't be because it would, the district court's construction, because it would preclude, for example, a recovery of, in an Equal Pay Act case, if you say, but I don't think it does because it doesn't apply in a discrimination case. It only applies where the claim is only under an express or implied agreement. Am I wrong about that? It only applies in a breach of contract case, essentially. Well, it may apply to the extent there could be some other wrongful employment practice that might link to it. But I think that the court. All I'm saying, it is pretty narrow. It wouldn't encompass, as I originally thought, a situation in which a black person was paid less than a white person and comes in and says, I want that increment. It wouldn't apply to that. I think that's right. But, again, I think the court's delving too deeply into what I believe is a much simpler question. And that's, you know, if unpaid services could reasonably mean two things. Can I understand why you gave that answer? That's the end of it. I want to make sure. Yes, John. Wrongful employment practice number four includes discrimination. So what does that refer to? Well, wrongful employment practice includes discrimination, but the exclusion for unpaid services seems to be limited to a claim for unpaid services under the sole basis of the claim is unpaid services under an express or implied agreement seeming to say that it doesn't apply when the basis of the claim is discrimination or something else. Right. I'm not sure I can answer the court's question because it was never briefed before, but I think it goes far beyond what you need to go to to find the district court misconstrued the term unpaid services. I see my time is up. Let me just say one other thing. I have one other question about it. Although I definitely see your point, it seems a little odd that someone would bother to write an exclusion like that if you only meant unpaid services. And why would there be a distinction between – if you only meant services that you got paid nothing for as opposed to services you got paid one cent for, why would you make a distinction like that? What would be the reason for it? Well, I can't prognosticate what insurers do or not do. This goes to the context, Brian, it seems to me. You have to make some sense out of it. Why would somebody do this? I think the simple answer is it's incumbent upon the insurer to define a term or otherwise use a term that has a single plausible plain meaning. And if it doesn't, and I submit it doesn't. But isn't the context concerned of Hoffman precisely to say, well, in context what does it mean? Would it make any sense to read it that way? I think it makes as much sense to say we don't want to insure a claim by you that you had someone do something for nothing. But we will cover a claim in which you failed to keep a promise to pay somebody all that you promised to pay. I don't find that an unreasonable view. What would be an example? Give me one example of a claim for unpaid services under an express or implied agreement reading unpaid services the way you do. A slavery claim? What would it be? I think it could be something more than that. I think it could possibly be I have a contract to do A, B, and C in exchange for X. And my employer says I want you to do D for that same amount of money. And I go, no. That would be a claim for unpaid services. You're asking me to do something that I wasn't obligated to do for nothing. But it seems to me that's exactly the position that Leonard was in. He was doing A, B, C, and D, and your client was only paying him for A, B, and C. I don't think that's correct. I think the fact of the matter was is on this record as much as it exists, he was doing A, B, and C, and for a portion of the time they told him, we're not going to pay you the full amount of money. We agreed to pay you to do A, B, and C. They paid him less per unit of work. It's just as plausible to think they would pay him less per unit of work as paid him for some units of work and not for others. That's really what you're saying. It's just as plausible. Yes, Your Honor. I see I'm way over my time. Thank you very much. Thank you. May it please the Court. Frank Hammond representing Travelers Insurance. I think I'll start with insurance policy construction in Oregon because that's where the last argument commenced. And we do agree that Hoffman construction is a controlling case. We do not agree as to the nuances that were presented to you. In particular, Travelers does not agree that the case requires a formalistic devotion to the dictionary and precise substitution of terms in making the context determination. Under Hoffman, what you're trying to determine first is plain meaning, and that may be ascertained through various flexible techniques. But when a term is undefined, it is for the court to decide the common understanding of the term by the ordinary purchasing public in the context of the policy, and that's the shoot case versus Farmers Insurance. Hoffman does not require rigid devotion to the dictionary, as the company seemed to say. Now, if there are two plausible meanings advanced for a term, the court is to look at the text and context of the policy, but not just the text and context of the specific provision at issue, but also look at the broad context of the policy and what it's trying to get at in making its determination. Hoffman makes very clear that construing the policy against the insurance company is a last resort. It's only there because you have to make some decision in applying the policy. Do you disagree that severance pay is at least ambiguous? Do I disagree that severance pay? I don't agree that severance pay is ambiguous. I think there is a way to get to a plain meaning of that term. And the way you do that is you look at Webster's Dictionary in the first place, and it says that severance pay is an allowance usually based on length of service that is payable to an employee on severance, except usually in case of a disciplinary discharge. The word usually in front of it. This is like a baseball player's contract, right, which says you're going to be paid for six years, whether you work or not, unless you do something wrong. Is that basically what it says? So the only piece of it that has to do with termination is an exception. But the basic promise is you're going to get paid for six years. It really doesn't have anything to do with whether he leaves or not. I look at it more as a dichotomy. He gets his pay if he's terminated for doing nothing, but he was supposed to get paid for the full term of his employment. He was supposed to earn that pay. So the pay for not working is due on termination. Except that, in essence, firing him, he has a promise that he will be employed for six years. That's the basic promise, right? And to fire him for no reason, to terminate him for no reason, is essentially a breach of that. So this is really a way of saying that, all right, even if we fire you for no reason, you're still going to get paid, so we're not going to have to litigate about a breach unless it's for cause. So it's simply a way of reiterating that you're going to be employed for six years. I guess the response to that is that severance pay has a very simple meaning. Right, and this isn't it. Because it doesn't have to do with a compensation for the fact that we're firing you. It just is a reiteration of the basic promise of this agreement, which is you're going to be employed for six years. But you would have that problem with any predetermined severance pay, because if you had an employment agreement that says we'll pay you after you're terminated, this golden parachute. Yeah, but those are different. At least the normal severance pay will be that if you've been here a certain amount of time, we'll give you, in order for some period of time for you to get your feet on the ground, we'll give you an amount of money. Now, there are things that are called. I mean, the guy who just got fired for, what was the first guy that got fired on Wall Street, he got what the newspapers at least call a severance package of $10.5 million, whether that's analogous to the baseball analogy or not. But this does seem to be, as Judge Berzano is saying, is a schedule of payments that goes on whether or not he's working if you fire him for cause. Not you, but if the employer fired him for cause. Well, that's true. And I will admit it's not a usual severance pay arrangement. But the dictionary doesn't require. Well, let's assume then that the dictionary doesn't resolve the issue. Then where do we go? If the dictionary doesn't resolve the issue, you go to the text and context of the term in the policy as a whole. Which is written in an ambiguous, inartful, ungrammatical manner. It's ungrammatical, but it does, if you take a look at the broad policy, it's very clear that it's. What's the rationale for excluding then this payment arrangement? The rationale? What's the rationale? They bought a policy for coverage, and now you're saying, well, it didn't cover the contract that you were insuring against. If you look at the exclusion, it says, severance pay under an employment contract or any agreement providing for payment in the event of separation. Well, let's assume. I mean, I actually, although I didn't walk in this way, found your opponent's explanation somewhat persuasive. But leaving that aside, let's assume that the payment in the event of separation from employment is pertinent here. Let's assume that that phrase is pertinent here. I'm not sure it helps you anyway, and I'm not sure that's not ambiguous. Because, again, this isn't a payment in the event of separation from employment. It is a payment. It's not a payment because of separation from employment, which it seems to me in the event of means. It's simply a promise to keep the person employed for six years with an exception. So the exception is in the event of termination, but the payment isn't in the event of separation. It's a payment for a six-year term. No, it's a payment for doing nothing, though. It's different than the payment for being employed. No, it's a promise. I'm going to pay you for six years, and I'm going to employ you for six years. Right. And if I breach that, essentially, by firing you for no reason, that's not going to affect the promise I made. I'm still going to have to pay you. But it's not a payment because of the termination. It's a payment despite the termination. Ordinarily, in other words, ordinarily you don't get severance unless you are terminated. This guy was going to get the same money whether he was terminated or not. Why is that in the event of termination? Well, let's say he, in the event of termination, he only got four years of compensation, just to put a hypothetical, instead of the full six. Then it would be more in the nature of a liquidated damages clause. I didn't understand your hypothetical. Could you repeat it? Okay. Let's say there was a promise to employ him for six years, but the conclusion was if we fire you without cause, we'll pay you just four years. Well, that's the other thing. It's totally inverse to any possible liquidated damages or severance pay,  so it can't possibly be related to a compensation for the dislocation because it's backwards. Well, it isn't required to be severance pay for it to be because of dislocation. I know, but the example you just gave me just proves it so. It's backwards because it's not like liquidated damages. You get more the less you've been injured. Let me ask you a question that I think piggybacks off that because you just adverted to it. Your opponent says that severance pay is implicit or explicit in both clauses. It's severance pay under an employment contract or severance pay under any agreement providing for payment in the event of separation. So in either category, it has to be in the nature of severance pay. Do you agree with that? I think that what I go back to is what you started with, which is that the last clause defines what severance pay is. I didn't start with that. I'm sorry. I think what you're doing under Hoffman is you're looking at the broad context of the policy and you're saying, what is this clause? Okay, so it's severance pay and it has to be, so the clause has to be in the nature, whether it's the first clause under an employment agreement or under any agreement, it still has to be in the nature of severance pay, right? Yes, but severance pay doesn't require all of the elements that he is saying it has to contain. Anything that provides for payment after separation is severance pay? Yes. Regardless of why, how it's calculated, or whatever? That's when you boil all those definitions down. That's what you think it is. So any payment after separation under your reading of the plain meaning is severance pay? That's right. I'll move on to the plain meaning of the unpaid services, if that's all right with the Court. And could you, in doing that, just at least address an issue or concern I have. Damages includes back pay. Right. Okay, so that's an inclusion, right? Yes. Okay, now is back pay the difference between, can back pay be the difference between or arise from a claim where you paid me less than I was entitled to get for the work I did, either under an express or implied agreement? I'm also not an employment lawyer, so that issue I'm not sure. Whoever wrote this contract or this policy must have been because they used back pay and front pay. And it's important to me, at least, to understand if the inclusion of back pay as damages could be read out of existence by the construction that I understand you're putting on it, then I have some trouble with the reasonableness or the plausibility. So unless I can understand that back pay, under Oregon law for some reason, can't include a differential, an award based on a differential between what I should have been paid and what I did get paid for the services that I worked, which is what happened here. And I don't know the answer to what back pay is under Oregon law. I'm sorry. All right. Isn't it, how do you counter the notion that it is at least ambiguous to say, there are two ways of looking at this, at the fact that he was paid less than he was promised. One is that for every unit of time he was paid $20 an hour instead of $30. And the other is that he was paid $150,000 for 30 hours a week and nothing for the other 10. Now, I would suggest that most people would think the first, but at least it's ambiguous. No? I think if you look at the contract of the employment agreement, it makes it clear. Leonard's agreement provides that for all services rendered by Leonard, under the agreement he would receive $250,000 a year. And that's where our argument comes from, that if he worked so many hours and was only paid for part of those hours, they were unpaid. But any ordinary person, ordinarily, if you get a pay cut, right, you don't say, oh, now they're only paying me for part of the hours I'm working. You say, no, they're paying me less for the total time I'm working. Or if you break it down, they're paying me less per hour. Nobody would think I'm now working for free for 10 hours because they're paying me less than they paid me before. I mean, it's just not the way people think about pay, especially in a salary situation. But if you're partly paid, it means some of the services are unpaid. No, it doesn't mean that. It means every service is paid less. Ordinarily, that's what people would think, or at least it's ambiguous. I don't agree that it's ambiguous. All right. I don't know how much money you make. Let's say you make $150,000 in your current job. Next week your employer says, you know, I don't have as much money next year. You're going to get paid $125,000. Would you come in and say, that's slavery for five hours a week because you're not paying me five hours a week? No, you'd never think that. You'd think I'm getting paid less for every hour I'm working. Not fair, but not because I'm doing slavery. The difference is he was promised $250,000 every year. So were you. $150,000, you were promised, but they reneged on it. What services are you not getting paid for? What are you doing in year one and year two, you perform the identical services. Year one, you got the agreed upon $150,000. Year two, you got $125,000. What services were you unpaid for? You're unpaid for the differential in what you were promised. The services were paid for. You just weren't paid, as Judge Berzon said, you weren't paid the amount you were due. It's not unpaid. You haven't taken on additional uncompensated. If they said, we're going to pay you $150,000, but next year we're going to pay you $175,000 because we're going to increase your scope of responsibility, and then they renege on that, you've done additional services and they haven't paid you for them. Right? That's right. You'd agree that's unpaid services. That's right. All right. But you're still doing the same services and getting paid less. In other words, unpaid services would be, I suppose, if you sign on to, you know, you're a teacher and you sign on to teach five classes a semester and they say, oh, now we want you to coach the soccer team too. And you say, well, that's not in my contract. And they say, well, you have to do it. Well, that would be an unpaid service. That's right. Okay. But that's not what's going on here. Well, what's going on here is he is supposed to do all of his services in return. Let's assume we at least say it's ambiguous. Let's go to the next step in Hoffman. Well, I think I can't go to the next step in the analysis because I disagree with you on that, and I want to try and explain it a little bit more. Partly paid and unpaid, partly unpaid services are synonymous. They're not necessarily ambiguous. They're synonymous. And that's the difference in this case. As far as the stock-related claims go, those claims to be a wrongful employment practice, the practice must have been a breach of the employment agreement. Here the agreement, the claims that Leonard made, did not arise from a breach of the employment agreement. They were breaches of the ISO plan. He made two claims. The companies failed to acknowledge exercise of his option to purchase 25% of his stock and failed to issue stock. Can I ask one factual question I didn't understand? It is stated several times in the briefs and the record that the stock, 25% of the stock vested. Does that mean the stock vested or the stock options vested? I believe it means the stock option to buy. Okay, so he didn't get 25% of the stock plus options in addition. He just got options. That's right. Okay. And he got one, well, I'll go into this in a second. And he also claimed the companies devalued his stock options as well. Now, Leonard characterized the claims as breaches of the employment agreement, but that is not binding on the court. The duty to indemnify is established by proof of actual facts demonstrating the right to coverage. Leonard's stock-related claims do not stem from the employment agreement. The agreement sets out certain promises related to stock. It says that they would adopt in the future an ISO plan. That's in your brief. I have a question I'm afraid I haven't resolved from the brief, and that is on the fraud claim, the notion of imputed knowledge and, therefore, a known risk. Would that apply in the context of negligent misrepresentation? Because can't you find negligent misrepresentation on known or should have known? And if they should have known but didn't, doesn't that then undercut the known risk concept? They knew that they made the representation. So all they had to know is that they made the representation, not that it was fraudulent or a negligent misrepresentation. That's right. That's how I read the policy. Thank you. Unless there are any questions, I'll conclude my argument at this point. Let me just say a couple of quick comments. Do you agree with what he said about known? No. But I don't have much more to add than I have in my brief. I think the known loss concept is misapplied in the way travelers and the district court sought to apply it here. Simply knowing I said something does not, under any commonly understood construction of this definition,  you'd have to at least know it was false. And if it was a negligent misrepresentation, you might not know it was false. Right. And I believe it's fundamentally, as case law has shown, more than that. And that's that you have to know that you're procuring coverage for something that is already a defined loss. I think what you're saying in your reply brief is that they had to know that a specific loss had happened or was going to happen. That's right. Not merely that an officer knew he was making a misrepresentation. Correct. Isn't that a very high standard? Well, one, it's an exclusion, and two, that's what the known loss rule is. Doesn't that almost mean that your client would know that he was going to be sued sometime in the future before it could be excluded? That's exactly how those provisions, which are very common, have been interpreted. Because, again, insurance covers fortuity. It doesn't cover a known loss. He doesn't know he has to be sued. He could know, for example, he could know that he was discriminated against. He could subjectively know that he discriminated against somebody on the basis of sex, but he doesn't have to know whether she knows it. In other words, it doesn't have to know that he's going to get sued, but he has to know he did it. Right? I think he has to know of facts which would involve an employment-related fact. Right, but he doesn't have to know that the person who was affected is actually going to sue him. He doesn't have to have notice of a claim, although there are different constructions from different courts. All right, let me rephrase. He has to know that he may be subject to suit. Correct, at a minimum. So that's what you're saying. That's what the known loss exclusion means. Yes, I'm advocating the narrowest construction and one consistent with courts elsewhere that have recognized that clauses like this should be enforced only to prevent fraud, basically, someone getting coverage without telling the insurer for a known loss. It does strike me, to go back to the negligent misrepresentation point, that as a substantive matter there seems to be a mismatch between a negligent misrepresentation in the context of a future projection. I mean, because those cases are sort of a cross between contract law and misrepresentation law to begin with. You're essentially saying, you know, I know now that I'm going to breach the contract. That's really what the fraud is. And how you would do that negligently, I don't know. It doesn't make sense to me. It doesn't seem possible to do that negligently. But I don't know if that matters now. That's a merits question. Right. Under Michigan law, whereas there are under Oregon law, I assume certain circumstances in which one can be held liable to another for making negligent misrepresentations. No, I understand that when it's retrospective. It makes sense to me. Correct. You can make a statement that you don't know is false, but it is false. But how you would do that with respect to a future, something that you have control over, I don't know. It doesn't make sense to me. I understand. But I don't know that that matters at this juncture. I don't know if it matters. I don't believe it does. Let's suppose we agree, I'm not saying we do, that the negligent misrepresentation negates the known risk aspect of this. What then? What is the effect on the claim since this never went to trial? We don't know whether it was intentional or negligent. There was a settlement. So how does one parse out from the settlement amount whatever amount was arguably attributable to the known risk aspect? I mean to the fraud negligent misrepresentation. Well, I think what the Court's getting at is the sixth issue, and that's the application of the larger settlement rule. So what I'd say is, in this case, Travelers has never advocated that part of the misrepresentation claim was or was not covered. But I suppose in theory, whether it's each of the five discrete claims or half of the fourth claim, the concept still applies, and our brief advocates the position the Court should take when it finds, if it does, some but not all of these claims were covered, that it would apply the larger settlement rule as we've advocated. All right. Thank you very much. All right. Thank you both. That's an interesting case. We appreciate the argument. We'll stand in brief recess for about ten minutes.
judges: Fisher, Berzon, Barzilay